FREDERICK F. AYER *vs.* PHILADELPHIA AND BOSTON FACE
BRICK COMPANY.

Suffolk.    March 9, 10, 1893. — May 17, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Deed — Mortgage — Covenant of Warranty — Bankruptcy — Discharge.*

A second mortgage of land recited that the land was " conveyed subject to " a certain right of drainage, a certain easement, " and the mortgage hereinafter named "; and the grantor covenanted that he was seised in fee of the " aforegranted premises," that they were free from all encumbrances " except a certain mortgage," describing it, " the right of drainage, and the easement aforesaid," that he had good right to sell and convey the same, and that he would warrant and defend the same " against the lawful claims and demands of all persons, except the right of drainage and the easement aforesaid." The court having decided that the covenant of warranty included the first mortgage, the tenant moved to reopen the case for the purpose of showing that, after a breach of the covenant in the second mortgage and before he repurchased the land, the mortgagor went into bankruptcy and was discharged. *Held,* that the judge below rightly ruled that the discharge was immaterial.

The inuring, by virtue of a covenant of warranty, of an after acquired title obtained by foreclosure of a paramount mortgage, is a technical effect of the covenant, and is not prevented by the disclosure of the mortgage in the body of the deed containing the warranty against it.

HOLMES, J.   When this case was before us the first time, 157 Mass. 57, it was assumed by the tenant that the only question was whether the covenant of warranty in the second mortgage should be construed as warranting against the first mortgage. No attempt was made to deny that, if it was so construed, the title afterwards acquired by the mortgagor would enure to the benefit of the second mortgagee under the established American doctrine.   The tenant now desires to reopen the agreed facts for the purpose of showing that after a breach of the covenant in the second mortgage, and before he repurchased the land, the mortgagor went into bankruptcy and got his discharge.   The judge below ruled that the discharge was immaterial, and for that reason alone declined to reopen the agreed statement, and the case comes before us upon an exception to that ruling.

The tenant's counsel frankly avow their own opinion that the discharge in bankruptcy makes no difference.   But they say that the inuring of an after acquired title by virtue of a covenant of warranty must be due either to a representation or to a promise contained in the covenant, and that if it is due to the former, which they deem the correct doctrine, then they are entitled to judgment on the agreed statement of facts as it stands, on the ground that there can be no estoppel by an instrument when the truth appears on the face of it, and that in this case the deed showed that the grantor was conveying land subject to a mortgage.   If, however, contrary to their opinion, the title inures by reason of the promise in the covenant, or to prevent circuity of action, then they say the provision is discharged by the discharge in bankruptcy.

However anomalous what we have called the American doctrine may be, as argued by Mr. Rawle and others (Rawle on Covenants, (5th ed.) §§ 247 et seq.), it is settled in this State as well as elsewhere.   It is settled also that a discharge in bankruptcy has no effect on this operation of the covenant of warranty in an ordinary deed where the warranty is coextensive with the grant.   *Bush* v. *Cooper*, 18 How. 82.   *Russ* v. *Alpaugh*, 118 Mass. 369, 376.   *Gibbs* v. *Thayer*, 6 Cush. 30.   *Cole* v. *Raymond*, 9 Gray, 217.   Rawle on Covenants, (5th ed.) § 251.   It would be to introduce further technicality into an artificial doctrine if a different rule should be applied where the conveyance is of

land subject to a mortgage against which the grantor covenants to warrant and defend. No reason has been offered for such a distinction, nor do we perceive any.

But it is said that the operation of the covenant must be rested on some general principle, and cannot be left to stand simply as an unjustified peculiarity of a particular transaction without analogies elsewhere in the law, and that this general principle can be found only in the doctrine of estoppel by representation, if it is held, as the cases cited and many others show, that the estoppel does not depend on personal liability for damages. Rawle on Covenants, (5th ed.) § 251.

If the American rule is an anomaly, it gains no strength by being referred to a principle which does not justify it in fact and by sound reasoning. The title may be said to enure by way of estoppel when explaining the reason why a discharge in bankruptcy does not affect this operation of the warranty; but if so, the existence of the estoppel does not rest on the prevention of fraud or on the fact of a representation actually believed to be true. It is a technical effect of a technical representation, the extent of which is determined by the scope of the words devoted to making it. A subsequent title would inure to the grantee when the grant was of an unencumbered fee although the parties agreed by parol that there was a mortgage outstanding; (*Chamberlain* v. *Meeder*, 16 N. H. 381, 384; see *Jenkins* v. *Collard*, 145 U. S. 546, 560;) and this shows that the estoppel is determined by the scope of the conventional assertion, not by any question of fraud or of actual belief. But the scope of the conventional assertion is determined by the scope of the warranty which contains it. Usually the warranty is of what is granted, and therefore the scope of it is determined by the scope of the description. But this is not necessarily so; and when the warranty says that the grantor is to be taken as assuring you that he owns and will defend you in the unencumbered fee, it does not matter that by the same deed he avows the assertion not to be the fact. The warranty is intended to fix the extent of responsibility assumed, and by that the grantor makes himself answerable for the fact being true. In short, if a man by a deed says, I hereby estop myself to deny a fact, it does not matter that he recites as a preliminary that the fact is not true. The difference

between a warranty and an ordinary statement in a deed is, that the operation and effect of the latter depends on the whole context of the deed, whereas the warranty is put in for the express purpose of estopping the grantor to the extent of its words. The reason " why the estoppel should operate, is, that such was the obvious intention of the parties." *Blake* v. *Tucker*, 12 Vt. 39, 45.

If a general covenant of warranty following a conveyance of only the grantor's right, title, and interest were made in such a form that it was construed as more extensive than the conveyance, there would be an estoppel coextensive with the covenant. See *Blanchard* v. *Brooks*, 12 Pick. 47, 66, 67 ; Bigelow, Estoppel, (5th ed.) 403. So in the case of a deed by an heir presumptive of his expectancy with a covenant of warranty. In this case, of course, there is no pretence that the grantor has a title coextensive with his warranty. *Trull* v. *Eastman*, 3 Met. 121, 124. In *Lincoln* v. *Emerson*, 108 Mass. 87, a first mortgage was mentioned in the covenant against encumbrances in a second mortgage, but was not excepted from the covenant of warranty. The title of the mortgagor under a foreclosure of the first mortgage was held to inure to an assignee of the second mortgage. Here the deed disclosed the truth, and for the purposes of the tenant's argument it cannot matter what part of the deed discloses the truth, unless it should be suggested that a covenant of warranty cannot be made more extensive than the grant, which was held not to be the law in our former decision. See also *Calvert* v. *Sebright*, 15 Beav. 156, 160.

The question remains whether the tenant stands better as a purchaser without actual notice, assuming that he had not actual notice of the second mortgage.

" It has been the settled law of this Commonwealth for nearly forty years, that, under a deed with covenants of warranty from one capable of executing it, a title afterwards acquired by the grantor inures by way of estoppel to the grantee, not only as against the grantor, but also as against one holding by descent or grant from him after acquiring the new title. *Somes* v. *Skinner*, 3 Pick. 52. *White* v. *Patten*, 24 Pick. 324. *Russ* v. *Alpaugh*, 118 Mass. 369, 376. We are aware that this rule, especially as applied to subsequent grantees, while followed in

some States, has been criticised in others.   See Rawle on Cove-
nants, (4th ed.) 427 *et seq.*   But it has been too long established
and acted on in Massachusetts to be changed, except by legisla-
tion."  *Knight* v. *Thayer*, 125 Mass. 25, 27.  See *Powers* v. *Pat-
ten*, 71 Maine, 583, 587, 589; *McCusker* v. *McEvey*, 9 R. I. 528;
*Tefft* v. *Munson*, 57 N. Y. 97.

It is urged for the tenant that this rule should not be ex-
tended.   But if it is a bad rule, that is no reason for making a
bad exception to it.   As the title would have inured as against
a subsequent purchaser from the mortgagor had his deed made
no mention of the mortgage, and as by our decision his covenant
of warranty operates by way of estoppel notwithstanding the
mention of the mortgage, no intelligible reason can be stated
why the estoppel should bind a purchaser without actual notice
in the former case, and not bind him in the latter.

Upon the whole case, we are of opinion that the demand-
ant is entitled to judgment.   Our conclusion is in accord with
the decision in a very similar case in Minnesota.   *Sandwich
Manuf. Co.* v. *Zellmer*, 48 Minn. 408.

*Exceptions overruled.*

*H. G. Parker & J. C. Gray,* (*E. L. Rand* with them,) for
the tenant.

*W. G. Russell & F. W. Kittredge,* for the demandant.