JAMES ANTONELLIS & another *vs.* EVA WEINSTEIN
& others.

Suffolk.    November 18, 1926. — January 21, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Mortgage,* Of real estate: foreclosure, accounting by mortgagee for surplus. *Evidence,* Competency.

The amount bid and paid by a purchaser at a sale in foreclosure of a third mortgage cannot be subject to use for payment of encumbrances prior to the third mortgage; and if that amount exceeds the sum required to satisfy the provisions of the third mortgage, the holder of an execution, issued upon a judgment recovered against the mortgagor before the foreclosure proceedings were begun and levied upon the real estate before the sale and before any other lien intervened, may reach such surplus and apply it toward the satisfaction of the execution.

BILL IN EQUITY, filed in the Superior Court on February 16, 1926, and afterwards amended, by James Antonellis and Herman W. Shaneck, holders, respectively, of judgments against the defendant Weinstein in the sums of $215.65 and $167.75, seeking a decree that their judgments be paid from such proceeds of the sale of the real estate of the defendant Weinstein, levied on by the plaintiffs, as were realized in foreclosure of a third mortgage antedating the plaintiffs' lien and exceeded the amounts due under the provisions of that mortgage.

The suit was heard by *Morton,* J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926), to take the testimony. Material facts are stated in the opinion. A decree for the plaintiffs was entered. The defendants Kelly and Shapiro appealed.

*L. Wyman,* for the defendants.

*J. E. Crowley,* (*L. Meltzer* with him,) for the plaintiffs.

CROSBY, J.   The plaintiffs, Antonellis and Shaneck, each in a separate action, recovered a judgment against the defendant Eva Weinstein, and before February 6, 1926, levied executions, issued in said actions upon a parcel of land

belonging to the defendant Weinstein. The land was subject to a first mortgage of $4,000, and a second mortgage of $4,100; a third mortgage, dated April 11, 1925, was held by the defendant Shapiro. On December 30, 1925, Shapiro assigned his mortgage to the defendant Kelly; it is agreed that the assignment was without consideration, and that in taking and foreclosing the mortgage Kelly was a "straw man" who acted merely as agent for Shapiro.

On January 7, 1926, Kelly, by a publication in the newspaper, advertised the land for sale on February 6, 1926, for the purpose of foreclosing the third mortgage for breach of its conditions. The notice of sale set forth that the land was "subject to a first mortgage of $4,000.00 held by the Eliot Savings Bank, dated November 6, 1922, . . . and subject to a second mortgage of about $4,100 at present, and subject also to taxes for 1925 . . . . Other terms to be announced at the sale." The defendants knew that executions had issued on the judgments obtained respectively in the above named actions about January 1, 1926, and that the property was subject to the levies made thereon.

At the time and place of sale the auctioneer, at the direction of counsel for Shapiro, the mortgagee, and in his presence, announced that there was a first mortgage of $4,000 on the property, and a second mortgage of $4,063, and interest of $36 due on the third mortgage; that $55 had been paid on the principal of the second mortgage, and $19 insurance and costs; "that the bids were to include these figures, but that there were unpaid taxes which amounted to about $237 and interest on the first mortgage amounting to $80 which the purchase price or the sale price did not include." He then called for bids. The first was that of Shapiro, and was either $8,700 or $8,750. Other bids were made by Shapiro and Kelly, and there was one by a third person whose name was not known to the auctioneer; finally Shapiro bid $9,050. As he was the highest bidder the property was sold to him. The amount due on the third mortgage held by Shapiro was $750 and $36 interest thereon. There was evidence that the auctioneer's commission on the sale would be over $300.

The trial judge found that the auctioneer at the sale an-

nounced that the amount of $9,050 bid by Shapiro included the first and second mortgages amounting to $8,100 and interest, and other payments made by the third mortgagee, and that if these payments were legally included in the amount bid, the liens of the plaintiffs could not be satisfied in full or in part. The judge then ruled that "so far as the plaintiffs' rights are concerned, the sale could not and did not include the first and second mortgages, and that the defendant must account to the plaintiffs out of the amount bid by him to the extent of their liens." This ruling was correct. The foreclosure of the third mortgage did not operate to discharge the encumbrance of the liens, but in equity they attached to the proceeds of the sale over the amount due on the third mortgage and expenses of sale. *Wiggin* v. *Heywood,* 118 Mass. 514. *Maguire* v. *Spaulding,* 194 Mass. 601. *LaCentra* v. *Jackson,* 245 Mass. 14, 18.

The defendant, Shapiro, acting through his agent Kelly, advertised the property for sale subject to the two prior mortgages and bid in the property for a sum in excess of his own mortgage. He could legally sell only his interest as mortgagee and the interest of the mortgagor under the power. The recital in the notice, "Other terms to be announced at the sale," did not authorize a sale which included the first and second mortgages, nor upon terms in violation of law.

The evidence offered by the defendant that he intended to include the first and second mortgages when he made his bid of $9,050 was not admissible. It had no bearing upon the rights of the parties as disclosed by the record. As was said in *Feuer* v. *Capilowich,* 242 Mass. 560, at page 565, "It must be assumed as a matter of law that the mortgagee intended to sell the interest of the mortgagor and his own interest in the property under the power; and he is estopped to claim any other understanding or intent of his own act in exercising the power and in becoming a purchaser at the sale, which was had in his presence and under his immediate supervision." See also *Fowle* v. *Merrill,* 10 Allen, 350; *Torrey* v. *Cook,* 116 Mass. 163; *Donohue* v. *Chase,* 130 Mass. 137.

The notice of sale for the foreclosure of mortgages, pre-

scribed by G. L. c. 244, § 14, provides that the premises shall be sold subject, among other things, to "existing encumbrances of record created prior to the mortgage . . . ."

It is plain that the sale in the present case could not legally include prior mortgages; to hold otherwise would not only be contrary to our decisions but would be in violation of the statute.

The question, whether the plaintiffs could join in a single bill to obtain the relief sought, was not argued by the defendant and need not be considered.

*Decree affirmed.*