Curran, Dennis J., J.
*538 INTRODUCTION
Harold B. Muiphy brings this action in his capacity as Chapter 7 Bankruptcy Trustee of Nigel Thorpe, the original plaintiff. Murphy brings this action against Wachovia Bank of Delaware and its Vice President, John Dunnery. Murphy seeks to recover surplus proceeds from a mortgage foreclosure sale.
Murphy, through Nigel Thorpe’s original complaint, alleges a violation of G.L.c. 244, §36 (Count I), a violation of G.L.c. 244, §14 (Count II), and a breach of mortgage (Count III). Additionally, Murphy alleges that Wachovia engaged in unfair and deceitful trade practices in violation of G.L.c. 93A (Count IV), conversion (Count V), unjust enrichment (Count VI), and negligence (Count VII).
The matter is now before the court on the defendants’ motion for summary judgment on all counts. For the reasons set forth below, the defendants’ motion is ALLOWED in part, and DENIED in part.
BACKGROUND
The following facts are construed in the light most favorable to Harold B. Murphy as the non-moving party.
This case centers around the mortgages on property located at 16 Hillside Way, Wilmington, Massachusetts. The original plaintiff, Nigel Thorpe, owned the property subject to two mortgages. Wells Fargo Bank, N.A. held the senior mortgage dated March 23, 1999; the original lender of which was G.E. Capital Mortgage Services, Inc., and the amount of the loan was $236,000. Wachovia[3] held the junior mortgage dated July 26, 2000, the original lender of which was Advanced Financial Services, Inc. and the amount of this loan, $158,330.
Following the filing for divorce and a temporary restraining order that ordered Mr. Thorpe to leave his home, Mr. and Mrs. Thorpe stopped making mortgage payments around October 2005. In March 2006, Mr. Thorpe defaulted on both mortgages. In April 2006, Wachovia, the junior mortgagee, commenced foreclosure proceedings on the property. Wachovia conducted the foreclosure pursuant to a power .of sale clause which reads:
The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of sale, including reasonable attorneys fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.
On July 25, 2006, Wachovia conducted a foreclosure auction on the Property. A third-pariy bidder, the Coniston Group, Inc., placed the winning bid of $420,000. The buyer’s attorney served as the settlement agent, and on August 24, 2006, disbursed $231,373.79 to Wachovia through its loan servicer. The next day, the parties closed the sale of the property through a foreclosure deed by corporation.
The buyer’s attorney then disbursed $178,626.61 of the sale proceeds to Wells Fargo, the intended purpose of which was to pay off the senior mortgage. However, Wachovia sold the property subject to that encumbrance because it was the junior mortgagee. The purchase price reflects Coniston’s knowledge of the senior mortgage, which was recorded in the Mid-dlesex Registry of Deeds, because the final sale price was $420,000, despite the property’s appraisal for $690,000 shortly before the foreclosure.
On January 23, 2007, Mr. Thorpe, through Attorney Murray, demanded $270,000 plus treble damages under G.L.c. 93A from Wachovia relating to the foreclosure sale.[4] On March 12, 2007, Wachovia paid Mr. Thorpe $64,502.96 (deemed excess funds from the sale), plus Coniston’s $10,000 deposit, totaling $74,502.96. Mr. Thorpe accepted the money.
On January 11, 2008, Mr. Thorpe filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code. In that case, Mr. Thorpe filed schedules of all assets and liabilities, but failed to disclose his claim against Wachovia. Based upon Mr. Thorpe’s representations, the bankruptcy trustee filed a Trustee’s Report of No Distribution on March 6, 2008, and that Court discharged Mr. Thorpe of scheduled liabilities totaling $888,000 on April 11, 2007. Five days later, the Court entered an order discharging the Trustee and closing the bankruptcy case.
After his bankruptcy case was closed, Mr. Thorpe verified the complaint in this action and filed the claims through Attorney Murray on June 4, 2008. However, in a Memorandum and Order regarding motions for summary judgment, a prior session judge determined that Mr. Thorpe was not the true owner of the claims. Mr. Thorpe was obligated to list his assets, including the putative claim against Wachovia, in his bankruptcy action. Because he did not do so, by operation of 11 U.S.C. §554(c) and (d), the claims remained property of the bankruptcy estate. As such, Harold B. Murphy, the Chapter 7 Trustee of Nigel Thorpe, moved to be substituted as the plaintiff. That motion was allowed on August 13, 2011. Mr. Murphy now brings this claim in place of Nigel Thorpe.
On October 7, 2011, Wachovia filed this motion for summary judgment against Mr. Murphy as Chapter 7 Trustee and substitute plaintiff.
DISCUSSION
I. Summary Judgment Standard
The court shall grant a motion for summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassesso v. Commissioner of Correction, 399 Mass. 419, 422 (1983). The moving party bears the burden of showing the absence of a genuine issue of material fact on every *539 issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A moving party may satisfy this burden by either submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
The non-moving party cannot defeat a motion for summary judgment by merely asserting that facts are in dispute. Mass.RCiv.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment, the non-moving party must introduce evidence to prove the existence of a genuine issue for trial. Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999). “Conclusoiy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985). All facts and inferences must be viewed in the light most favorable to the non-moving party. Attorney General v. Bailey, 386 Mass. 367, 370 (1982).
II. Judicial Estoppel
“Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). ‘The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants.” Canavan’s Case, 432 Mass. 304, 308 (2000). The doctrine is properly invoked whenever a “party is seeking to use the judicial process in an inconsistent way that courts should not tolerate.” East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996).
Wachovia argues that because Mr. Thorpe failed to disclose Wachovia’s payment to him and the claims he held against Wachovia, the Trustee is estopped from asserting his claims. Essentially, the Trustee steps into the shoes of Mr. Thorpe, and because Mr. Thorpe’s shoes are “tarred with fraud,” the Trustee cannot move forward on the claims as a substitute plaintiff.
To support its argument, Wachovia points to Otis v. Arbella Mutual Ins. Co., 443 Mass. 634 (2005). However, the fact pattern in Otis is unlike that which is before this court. In Otis, the plaintiff brought a claim that a previous defendant, Curtis, assigned to him. Id. at 638. Otis had already succeeded in a tort claim against Curtis. Id. When Otis realized that Curtis had insufficient funds to satisfy the judgment, Otis accepted an assignment of Curtis’s legal malpractice claim against Curtis’s attorney stemming from the original case. Id. at 639. In the assigned claims, Otis tried to assert a substantially different position than he asserted in the first trial. Id. The Supreme Judicial Court found that Otis’s change of positions “does not ameliorate the harm to the judicial system posed by such conduct” and barred its claims. Id. at 644.
Such self-serving conduct does not confront this court. Mr. Thorpe is not in a position to benefit from the Trustee pursuing these claims. Under 11 U.S.C. §541, the claims are the sole property of the bankruptcy estate. However, Mr. Thorpe previously failed to list these claims as part of his assets when he filed for bankruptcy and attempted to pursue them himself. When he did so, they were not his property, but rather the property of the bankruptcy estate. If this court held that the Trustee is estopped from pursuing these claims due to the conduct of Mr. Thorpe, Wachovia would benefit from his fraud. Therefore, applying the theory of judicial estoppel to the claims now pursued by the Trustee would be inequitable and inappropriate.
III. Massachusetts Mortgage Laws
Counts I, II, and III assert various violations of mortgage laws.
Count I asserts that Wachovia violated G.L.c. 244, §36, which reads in relevant part:
If a mortgagee or person claiming or holding under him receives from rents and profits of the land, or upon a tender made to him, or in any other manner, more than is due on the mortgage, and no suit for redemption is brought against him, the mortgagor or other person entitled to such excess may recover in a civil action.
This statute merely allows a mortgagor, or other person entitled (in this case, the Trustee), to bring a civil action to recover surplus funds. The statute was not “violated." In fact, the statute allows the action that the Trustee presently brings. It appears that the original complaint was merely worded improperly. Therefore, as it has been plead, summary judgment as to Count I is ALLOWED.
Count II asserts aviolation of G.L.c. 244, §14, which establishes that property is conveyed “subject to . . . existing encumbrances of record created prior to the mortgage.”
Here, Wachovia foreclosed on a mortgage that was junior in interest to a mortgage held by Wells Fargo. The Wells Fargo mortgage was recorded at the Middle-sex Registry of Deeds on April 1, 1999. The Wachovia mortgage was recorded over a year later on July 26, 2000. When Wachovia exercised its power to sell the property, the property was still encumbered by the Wells Fargo mortgage. G.L.c. 244, §14; see Antonellis v. Weinstein, 258 Mass. 323, 326 (1927). Additionally, the buyer, Coniston, purchased the property with constructive notice of the Wells Fargo mortgage. After the sale, Wachovia had a right to pay off its own mortgage, but surplus proceeds should not have been distributed to Wells Fargo. Taking the facts in the light most favorable to the non-moving party, this claim *540 should survive. Summary judgment as to Count II is, therefore, DENIED.
In a similar vein, Count III alleges breach of mortgage. Paragraph 17 of the Wachovia mortgage outlines the order in which the proceeds of the sale should be applied. Costs of sale are to be covered first, followed by the sum secured by the mortgage, then followed by the “persons legally entitled thereto.” Because it appears that Wells Fargo was not legally entitled to the proceeds of the sale, summary judgment on Claim III must also be DENIED.
IV. Unfair Trade Practices and Other Claims
Count IV alleges that Wachovia engaged in unfair trade practices under G.L.c. 93A because Wachovia conducted the distribution of proceeds improperly. G.L.c. 93A “does not itself define what constitutes an act or practice.” Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986). However, the Supreme Judicial Court has relied upon the Federal Trade Commission’s interpretation of unfairness which identifies the “considerations to be used in determining whether a practice is to be deemed unfair: ‘(1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) . . . is immoral, unethical, oppressive, or unscrupulous; (3)... causes substantial injury [to] . . . competitors or other businessmen.’ ” Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 682 (2011), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
Here, Murphy, through Thorpe’s complaint, asserts that Wachovia committed unfair trade practices when it mishandled the distribution of proceeds from the sale and refused to return any surplus. However, the facts do not indicate that Wachovia conducted business in an unscrupulous manner sufficient to satisfy an unfair trade practices claim under G.L.c. 93A. The complaint merely asserts in a conclusoiy manner that Wachovia engaged in “oppressive, unscrupulous and otherwise unconscionable” behavior. Specific allegations of fraud or intentional misconduct are not alleged. Because the facts do not suggest a sufficient level of unethical behavior, summary judgment as to Count IV is ALLOWED.
Count V alleges that Wachovia committed conversion. “The elements of conversion require that a defendant be proved to have ‘intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time.’ ” Grand Pac. Fin. Corp. v. Brauer, 57 Mass.App.Ct. 407, 412 (2003), quoting Abington Nat’l Bank v. Ashwood Homes, Inc., 19 Mass.App.Ct. 503, 507 (1985). This theory of recovery extends to tangible property, and in some cases to funds that can be identified, but not money owed on a debt or general damages. See Grand Pac. Fin. Corp. v. Brauer, 57 Mass.App.Ct. 407, 412 (2003). Summary judgment as to Count V is ALLOWED.
Count VI alleges that Wachovia was unjustly enriched. Unjust enrichment is the “retention of money or properly of another against the fundamental principles of justice or equity and good conscience.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). However, an equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law. Popponesset Beach Ass’n. v. Marchillo, 39 Mass.App.Ct. 586, 593 (1996). Here, Murphy has adequate remedies at law. Summary judgment as to Count VI is ALLOWED.
Count VII alleges that Wachovia breached a duty to Thorpe, as mortgagor, to exercise reasonable care in collecting and distributing funds. However, this claim alleges purely economic losses. Such losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage. FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). Summary judgment as to Count VII is ALLOWED.
ORDER
For these reasons, it is hereby ORDERED that the defendants’ motion for summary judgment is ALLOWED as to Counts I, IV, V, VI, and VII in their entirety. However, the defendants’ motion for summary judgment as to Counts II and III is DENIED.

Wachovia and Wells Fargo have since merged. Wachovia is now known as Wells Fargo Bank, N.A.

A Wachovia account statement dated January 26, 2006, reveals that Mr. Thorpe’s account had a principal balance of $131,580.67. Presumably, the $270,000 figure is a “ballpark” figure arrived at by subtracting the principal balance from the total sale price of the home. However, the principal balance is not the “payoff amount” for the account.